**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| AHMYAH S. SMITH | : | |
| 2909 Ratterman Ave. | : | Case No.: 17-794 |
| Cincinnati, Ohio 45211 | : | |
| | : | |
| On Behalf of Herself and Others Similarly Situated | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN F. KURGIS CO., LPA | : | |
| c/o Kevin F. Kurgis | : | |
| 100 S. Fourth St., Suite 200 | : | |
| Columbus, Ohio 43215 | : | |
| | : | |
| Defendant. | : | |

## CLASS ACTION COMPLAINT

Now comes AHMYAH S. SMITH, by and through her undersigned counsel, individually and on behalf of all others similarly situated, states her Complaint against KEVIN F. KURGIS CO., LPA as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal laws of the United States, and more specifically the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

2. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim(s) occurred in this judicial district.

1

## THE PARTIES

3. Ahmyah S. Smith ("Plaintiff"), is a naturally born person who currently resides in Cincinnati, Ohio.

4. Kevin F. Kurgis, Co., LPA ("Defendant"), is a for-profit, professional corporation registered as active with the Ohio Secretary of State.

5. Defendant uses instrumentalities of interstate commerce or the mails in its business of collecting debts.

6. Defendant regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, others.

7. Defendant collects debts on behalf of multiple clients, including the State of Ohio and/or affiliated entities.

## FACTUAL ALLEGATIONS

8. Plaintiff attended Wright State University ("WSU"), located in Dayton, Ohio and eventually graduated in November 2008.

9. As part of Plaintiff's financial aid package, Plaintiff became eligible for WSU's Continuing Enrollment Loan program, a program which allowed Plaintiff to borrow up to $9,000.00 with a 50% debt forgiveness if Plaintiff later graduated from WSU.

10. Plaintiff executed the "Wright State University Continuing Enrollment Loan Master Promissory Note" ("Note") on or around August 11, 2005. A true and authentic copy of the Note is attached hereto as Exhibit A.

11. Pursuant to the terms of the Note, Plaintiff was obligated to engage in an "exit interview" with WSU after graduation, which Plaintiff did on or around December 4, 2008.

12. On December 4, 2008, as part of the exit interview, Plaintiff executed a "Student Loan Repayment Schedule and Disclosure Statement" to repay the balance due and owing on the Note after Plaintiff graduated, and after the 50% reduction was made. Plaintiff was ultimately obligated to pay WSU a balance of $3,240.00, which accrued interest at the annual rate of 5%, with payments beginning on October 1, 2009, following the no-interest deferment period. A true and authentic copy of the Student Loan Repayment Schedule and Disclosure Statement is attached hereto as Exhibit B.

13. Between 2010 and early 2012, Plaintiff encountered a number of difficult life and financial circumstances that prevented her from being able to make consistent monthly payments on the Note.

14. On or around September 11, 2012, Plaintiff received a collection letter from Delev & Associates, LLC as special counsel to the Ohio Attorney General ("OAG"). That letter demanded that Plaintiff pay $6,424.52, which included $2,546.12 in unexplained "fees". A true and authentic copy of the September 11, 2012 letter is attached hereto as Exhibit C.

15. Between September 11, 2012 and early September 2016, Plaintiff remained in a difficult financial position to pay off the outstanding debt due, but she became increasingly wary about the accuracy of the actual balance because the OAG had engaged in annual set offs of her State of Ohio tax refunds since 2011.

16. In early September 2016, Plaintiff contacted the OAG to discuss repayment of the amounts due on the Note believing that a significant portion of the debt should have been retired due to the application of her State tax refunds. The OAG informed Plaintiff that it had already engaged Defendant to collect the debt and that Plaintiff should contact Defendant for further information and to make payments. Plaintiff did so.

17. After September 13, 2016, and in response to Plaintiff's initial inquiry, Defendant sent Plaintiff an undated, collection letter containing attached "screenshots" from the OAG's collection platform (knows as "CUBS"). A true and authentic copy of the September 13, 2016 letter is attached hereto as Exhibit D.

18. The letter asked that Plaintiff "call" Defendant's office "to resolve", and indicated by virtue of the attachments, that Plaintiff owed at least $6,604.81. The attachments further indicated that the balance consisted of *inter alia*, a "penalty" in the amount of $33.25; "misc" of $60.00; and "collection costs" totaling $1,912.76.

19. Neither the September 13, 2016 nor its attachments contained the notice or notices required under 15 U.S.C. §1692e(11)[1].

20. Between March 9, 2010 and March 21, 2016, $1,700.48 was paid on the Note in the form of occasional payments and State tax refund offsets. According to the Note and Disclosure Statement, interest at the rate of 5% between September 2, 2009 and September 13, 2016 calculates to $1,388.22.

21. The "penalty", "misc." and "collection costs" amounts set forth in Defendant's September 13, 2016 communication totaled $2,006.21, which equates to over 61% of the principal amount of the debt. The Note does not call for capitalization of interest, penalties, or "misc." charges. Moreover, the Note only calls for "reasonable collection costs", but then includes an unenforceable attorney fee clause.

**COUNT ONE: VIOLATIONS OF 15 U.S.C. §§ 1692e(11), 1692e(2)(A), and/or 1692e(2)(B)**

22. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

---

[1] Section 1692e(11) states: The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action

23. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

24. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

25. Plaintiff's obligation owed to WSU was in the nature of a personal consumer obligation and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

26. The September 13, 2016 dunning letter and attachments sent by Defendant to Plaintiff is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

27. Defendant's September 13, 2016 letter fails to contain the required notice or notices under 15 U.S.C. § 1692e(11) which constitutes an actionable violation.

28. Defendant's letter asserted that Defendant had the legal right to collect certain collection costs, penalties and miscellaneous charges totaling $2,006.81, plus interest that appears to be miscalculated and/or improperly capitalized.

29. Defendant's assertion that it had the legal right to collect the additional $2,006.81, and collect the additional improperly calculated interest were tantamount to false, deceptive, and misleading representations in violation of 15 U.S.C. § 1692e.

30. Defendant's assertion that it had the legal right to collect $33.25 in "penalty", $60.00 in "misc", and $1,912.76 in combined "collection costs", were each false representations of the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

31. Defendant's assertion that it had the legal right to collect $1,912.76 in combined "collection costs" comprised a false representation of the services rendered or compensation which may be lawfully received by Defendant for its collection of the debt in violation of 15 U.S.C. § 1692e(2)(B).

32. Defendant's dunning letter further falsely represented the amount of the debt by calculating the interest due and owing in a manner seemingly in violation of the Note. While it is

unclear, it appears that Defendant has represented that some or all of the interest accruing under the Note is subject to capitalization which is a further violation of 15 U.S.C. § 1692e(2)(A).

33. As a result of Defendant's actions, Plaintiff has incurred actual damages in the form undue stress, aggravation, lost work-time, costs, and legal fees.

34. Pursuant to 15 U.S.C. § 1692k, Plaintiff is accordingly entitled to actual damages, such additional statutory damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorney's fees.

### COUNT TWO: CLASS ALLEGATIONS - VIOLATIONS OF
### 15 U.S.C. §§ 1692e, 1692e(2)(A), and/or 1692e(2)(B)

35. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

36. Upon information and belief, from September 13, 2016 to present, Defendant sent or caused to be sent numerous dunning letters and other collections correspondences, including court complaints, to consumers similarly situated to Plaintiff, attempting to collect consumer debts alleged to be owed to various entities of the State of Ohio ("Putative Class").

37. Upon information and belief, in those dunning letters and other collection communications, Defendant attempted to collect, and in some cases collected, certain collection cost amounts Defendant was not lawfully entitled to collect.

38. Defendant's assertion in those dunning letters and other collection communications that it had the legal right to collect collection costs comprised the use of a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e.

39. Defendant's assertion in those dunning letters and other collection communications that it had the legal right to collect collection costs comprised a false representation of the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

40. Defendant's assertion in those dunning letters and other collection communications that it had the legal right to collect collection costs comprised a false representation of the services rendered or compensation which may be lawfully received by Defendant for its collection of the debt in violation of 15 U.S.C. § 1692e(2)(A).

41. Pursuant to 15 U.S.C. § 1692k, the Putative Class members are accordingly entitled to actual damages sustained as a result of Defendant's failure to comply with the FDCPA, including disgorgement of any collection cost amounts illegally collected, and such additional statutory amounts as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Defendant, and the costs of this action, together with reasonable attorney's fees.

42. Upon further discovery, Plaintiff intends to define and move to certify a class of similarly situated consumers who were sent or caused to be sent by Defendant, on or after July 27, 2015, dunning letters or other collection communications seeking the collection of collection cost amounts pertaining to consumer debts alleged to be owed to various entities of the State of Ohio.

43. This action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23.

44. Upon information and belief, members of the Putative Class are so numerous that joinder is impractical.

45. Plaintiff estimates that Putative Class members number in the thousands or more.

46. Plaintiff will assure the adequate representation of all members of the Putative Class and has no conflict with Putative Class members in the maintenance of this action.

47. Plaintiff's interests in this action are typical of the class, as the collection cost amount Defendant attempted to collect from Plaintiff was calculated and derived in substantially the same manner as the collection cost amounts Defendant sought from Putative Class members.

48. Plaintiff's interests in this action are antagonistic to the interests of the Defendant.

49. Plaintiff has no interest in or relationship with Defendant that would prevent her from litigating this matter fully on behalf of the Putative Class.

50. Plaintiff is aware that settlement of this class action is subject to court approval.

51. Plaintiff will vigorously pursue the class claims throughout the course of this action.

52. A class action will provide a fair and efficient means to adjudicate this controversy since the claims of the Putative Class members are virtually identical, raising the same questions of fact and law.

53. Most if not all facts needed to determine damages are obtainable from the records of Defendant and the State of Ohio.

54. The purposes of the FDCPA, a broad remedial statute, will be best effectuated by a class action.

55. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

56. Because the damages suffered by most of the Putative Class member are relatively small in relation to the costs, expense, and burden of individual litigation, it would be difficult for members of the Putative Class to individually redress the wrongs done to them.

57. Many if not all of the Putative Class members are unaware that claims exist against Defendant.

58. There will be no unusual difficulty in the management of this action as a class action.

59. Common questions of law predominate over all matters in this class action, as the allegations all concern Defendant's right(s) under Ohio law to collect certain collection costs on consumer debts owed to Ohio entities, and whether such collection constitutes a violation of a singular federal act (the FDCPA).

**WHEREFORE**, Plaintiff prays for the following relief:

A. A determination that the Defendant violated the Fair Debt Collection Practices Act as to Plaintiff individually under 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(11); with a judgment and award of all actual and statutory damages, and other relief to which Plaintiff may be individually entitled under 15 U.S.C. § 1692k including but not limited to costs and reasonable attorney fees;

B. A determination of Class certification (upon proper motion) under 15 U.S.C. § 1692k(2)(B) and Fed. R. Civ. P. 23 for all similarly situated individuals from whom Defendant attempted to collect similar "penalties", "misc" charges, and/or excessive "collection costs" as to debts referred to it by the OAG from September 13, 2016 to the present; with Plaintiff and her counsel serving as adequate Class representative and counsel.

C. An award of such other and further relief that the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff hereby demands a jury for all issues triable.

Dated this 7th day of September 2017.

                                                Respectfully submitted,

                                                 /s/  James E. Nobile
                                                James E. Nobile (0059705)
                                                **Nobile & Thompson Co., LPA**
                                                4876 Cemetery Road
                                                Hilliard, Ohio 43026
                                                Phone:  614.529.8600
                                                Fax:  614.629.8656
                                                jenobile@ntlegal.com
                                                *Counsel for Plaintiff and Putative Class*